## COMPTON *v.* STATE.

### Opinion delivered November 27, 1911.

1. CRIMINAL LAW—ARREST OF JUDGMENT.—Under Kirby's Digest, section 2427, the only ground upon which a judgment may be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. (Page 217.)

2. EMBEZZLEMENT.—NATURE OF OFFENSE.—Though Kirby's Digest, section 1837, defining embezzlement, concludes by providing that the person so committing an act of embezzlement shall be deemed guilty of larceny, yet embezzlement is regarded as a distinct crime. (Page 217.)

3. STATUTES—CONSTRUCTION.—Every statute, where it is practicable, must be so construed that every part and provision contained in it may have some operation. (Page 218.)

4. STATUTES—CONSTRUCTION.—EJUSDEM GENERIS—Where 'an act attempted to enumerate the several species of a generic class, and follows the enumeration by a general term more comprehensive than the class, the act will be restrained in its operation because it is discerned that the Legislature so intended; but where the detailed enumeration embraces all the things capable of being classed as of their kind, and general words are added, they must be applied to things of a kind different from those enumerated. (Page 219.)

5. EMBEZZLEMENT—DEFENSE—EVIDENCE.—In a prosecution of a school director for embezzlement in raising a school warrant, drawn to pay a balance due, to an attorney for services rendered for the district in certain litigation, evidence of a resolution of the school board that defendant was to receive $75 if the litigation was settled without suit, and $100 if suit was brought, was properly excluded in the absence of any evidence to connect such resolution with the raising of the warrant. (Page 223.)

6. APPEAL AND ERROR—HARMLESS ERROR.—Where the instructions given on behalf of the State were correct, accused was not prejudiced by the giving of incorrect and contradictory instructions at his instance. (Page 225.)

7. EMBEZZLEMENT—STATUTE CONSTRUED.—Kirby's Digest, section 1837, defining the offense of embezzlement by any clerk, apprentice or servant, employee, agent or attorney of any private person or of any co-partnership, except clerks, apprentices, servants and employees within the age of sixteen years, or any officer, clerk, servant, employee, agent or attorney of any incorporated company or any person employed in any such capacity, who shall embezzle or convert to his own use * * * *without the consent of his master or employer,"* etc., is not applicable to the case of an officer of a school district who embezzles its funds, since the district could not consent to an embezzlement of its funds. (Page 225.)

8. SAME—CONSTRUCTION OF STATUTE.—Kirby's Digest, section 1839, defining the crime of embezzlement "by any carrier or other bailee," is not confined to bailees of the generic class "carriers," but embraces all bailees. (Page 226.)

9. SAME—DEFENSE.—Where defendant, as an officer of a school board, had authority to fill out a warrant for an obligation of the district, but fraudulently filled it out for an excessive amount and converted the excess to his own use, he will not be heard to say that he did not come into possession of such excess rightfully and therefore was not a bailee. (Page 227.)

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*Joseph W. House, George W. Murphy, Charles E. Daggett, R. D. Smith* and *H. F. Roleson,* for appellant.

1. The motion in arrest of judgment should have been sustained. Embezzlement being purely a statutory offense, no offense is stated if there is no statute covering the particular charge in the indictment. In this case section 1837 of Kirby's Digest could not be applicable because that statute does not apply to public officers, nor agents of any public or municipal corporation. The term "incorporated company" applies only to private corporations. 22 N. Y. 243. Even if it be held to apply to an officer of a public corporation, still, under its terms, the money must come into the hands of the defendant by virtue of his office. On the face of the indictment, it does not appear that the defendant was an officer into whose hands any public funds could legally come. If what the indictment states as facts are facts, it has no legal basis on which to stand. Finally, it does not conclude *contra pacem.* 19 Ark. 613; 47 Ark. 230; 56 Ark. 515; 34 Ark. 693; Kirby's Digest, § 7663. See also 22 N. Y. 245; 2 Bishop, Crim. Law, (5 ed.) § § 352, 353, 360, 363; 74 N. W. 319; 124 U. S. 525, 31 L. Ed. 634; 33 Ky. L. Rep. 97, 112 S. W. 586; 110 Mo. 209, 19 S. W. 650; 26 O. St. 265; 47 N. E. 138; 119 S. W. 85; 77 Ark. 412; 8 Tex. App. 406; 116 Mass. 1.

2. The court erred in giving on its own motion, and at the instance of the State's attorney, instructions which were in conflict with other instructions given at the request of the defendant. 77 Ark. 200; 76 Ark. 224; 65 Ark. 65.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The indictment sufficiently alleges and the evidence sufficiently shows that appellant converted the money of the school district to his own use with the intention to defraud the district. The indictment is sustainable either under section 1837 or 1842, Kirby's Digest. The evidence shows that he was in possession of the money by virtue of the fact that he was secretary of the school board, and as such was a public officer. Throop's Public Officers, § 7 (cases cited in note 3); Mechem's Public Offices & Officers, § 714, *et seq.*; 34 Ark. 562; 80 Ark. 263; 136 S. W. 947.

2.   The disposition of.the first proposition will dispose of the question of the sufficiency of the evidence to support the verdict.   If the indictment is good, there is undoubtedly sufficient evidence to support the verdict.

HART, J.   The defendant, W. A. Compton, has appealed from the judgment of conviction for the crime of embezzlement. The indictment, caption and formal parts omitted, is as follows:

"The said W. A. Compton in the county and State aforesaid on the 4th day of October, 1907, then and there being a duly elected, qualified and acting member of the Board of Directors of Special School District No. 1 of Marianna, which said school district is a corporation organized under the laws of the State of Arkansas, and the said W. A. Compton, then and there being the duly elected and acting secretary of the board of directors, and then and there as such secretary having authority under the law to draw warrants on the county treasurer of Lee for money payable out of the funds of said school district, did draw a warrant on the county treasurer of Lee County, payable to himself, out of the funds of said school district, which said warrant, drawn and signed by the said W. A. Compton as said secretary and also signed by the president of the board of directors of said school district, is in words and figures as follows:

"District School Fund, District No.

No.                              10-4-1907.

Treasurer of Lee County, Arkansas:

.·  "Pay to W. A. Compton, Sec'y, or order the sum of one hundred and fifty_____100 dollars out of the Special School District Fund, Marianna.

"For fee to S. H. Mann in school cases.

"H. B. Derrick, Jr., Pres.

"W. A. Compton, Sec'y.

"Directors."

"And then and there he, the said W. A. Compton, having said warrant in his possession, by reason of his said office as secretary of said board of directors, the said warrant being payable to him, the said W. A. Compton, secretary, or order, did indorse the same in blank as secretary, on the back thereof, and then and there did present and deliver the same to the Bank

of Marianna, and then and there the said Bank of Marianna did present said warrant, drawn as aforesaid, to the treasurer of Lee County, and then and there did receive from the said treasurer of said Lee County $150 out of the funds belonging to the Special School District No. 1 of Marianna, and then and there he, the said W. A. Compton, by virtue of his said office did receive from the Bank of Marianna the sum of $100 of said sum of $150 received from the Bank of Marianna, of the treasurer of Lee County, Arkansas, of gold, silver and paper money, the property of the said school district, of the value of $100, and then and there unlawfully and feloniously did embezzle and convert the same to his own use, and so, the said W. A. Compton, the sum of $100, of gold, silver and paper money, of the value of $100, the property of Special School District No. 1 of Marianna, unlawfully and feloniously did steal, take and carry away, against the peace and dignity of the State of Arkansas "

No demurrer to the indictment was filed, but the defendant filed a motion in arrest of judgment. The statute provides that the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. Kirby's Digest, § 2427; *Ince* v. *State*, 77 Ark. 426.

Counsel for defendant rely for a reversal of the judgment chiefly upon the ground that there is no statute under which the indictment in this case could be drafted. They claim that no offense is charged under any of the sections of our statute relating to embezzlement.

Section 1837 of Kirby's Digest reads as follows: "If any clerk, apprentice or servant, employee, agent or attorney, of any private person, or of any copartnership, except clerks, apprentices, servants and employees within the age of sixteen years, or any officer, clerk, servant, employee, agent or attorney, of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make way with, or secrete, with intent to embezzle or convert to his own use, without the consent of his master or employer, any money, goods or rights in action, or any valuable security or effects whatsoever belonging to any other person, which shall have come to his possession, or under his

care or custody, by virtue of such employment, office, agency or attorneyship, he shall be deemed guilty of larceny and on conviction shall be punished as in cases of larceny."

It is contended that the allegations of the indictment do not bring the defendant within the category of persons who may be guilty of embezzlement under this section of our statute. Embezzlement is purely a statutory offense. While our statute concludes by providing that the person so committing an act of embezzlement shall be deemed guilty of larceny, yet embezzlement is regarded as a separate and distinct crime, and is so treated in our decisions. It is evident that the allegations of the indictment do not bring the defendant within the class of persons in the statute designated as clerks, apprentices or servants of any private person or copartnership, or officers, agents, clerks or servants of any incorporated company. The particular inquiry then is, what is the meaning of the clause, "or any person employed in any such capacity?" It is a fundamental rule of construction "that every statute, where it is practicable, must be so construed that every part and provision contained in it may have some operation." *Dunn* v. *State,* 2 Ark. at p. 250. In like manner, the section in question is to be construed as a whole, and the meaning to be attached to any particular word or clause is to be ascertained from the context. In other words, "a statute must receive such reasonable construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object." 2 Lewis' Sutherland, Stat. Con., (2 ed.) § 368. This rule of interpretation was recognized and applied by the court in the case of *Matthews* v. *Kimball,* 70 Ark. at p. 458. In the discussion of the application of the rule the court quoted approvingly from Black on Interpretation of Laws, p. 143, as follows: "The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors." Continuing, the court quoted the following from Sutherland, Stat. Const., p. 360: "The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called *ejusdem generis.* If the particular words exhaust a whole genus, the general words must refer to some larger genus." So, too, in the case of *Wallis*

v. *State,* 54 Ark. 611, in discussing the rule of *ejusdem generis,* the court said:

"Where an act attempted to enumerate the several species of a generic class, and follows the enumeration by a general term more comprehensive than the class, the act will be restrained in its operation because it is discerned that the Legislature so intended, but where the detailed enumeration embraces all the things capable of being classed as of their kind, and general words are added, they must be applied to things of a different kind from those enumerated. For the rule does not require the entire rejection of general words, and is to be used in harmony with the elemental canon of construction that no word is to be treated as unmeaning if a construction can be found that will preserve it and make it effectual."

This was an embezzlement case, and the court held: (quoting from syllabus): "The statute defining the crime of embezzlement by 'any carrier or other bailee' is not confined to bailees of the generic class 'carriers,' but embraces all bailees."

In the application of the rule to the present case, we think that the words, "in any such capacity" refers to the relation or position of the person employed and not to the class of persons who employed him. Any other construction would render the clause meaningless; for the statute by an enumeration in detail has already exhausted the classes of persons who might be guilty of embezzlement of the property of a private person, copartnership or private corporation. The general words "or any person employed in any such capacity" must be given a meaning outside of the classes indicated by the particular words, or we must say that they are without meaning as used in the section in question, and thereby sacrifice the general to preserve the particular words. Therefore, we are of the opinion that the words, "any person employed in any such capacity" mean any person employed in the capacity of officer, agent, servant, etc. When so construed, section 1837 does not limit the persons who may be guilty of embezzlement to those employed by private persons, private corporations or partnerships, but includes as well any person employed in the capacity of agent, or servant, etc.

The indictment in question alleges that the defendant was secretary of the school board, and that as such he had authority

to draw warrants on the treasurer of the county payable out of the funds of the school district; that he did draw a warrant on the county treasurer payable to himself, and that the same was also signed by the president of the board. The warrant is set out in the indictment, and shows that it was drawn to pay S. H. Mann for legal services due him by the school board. This is sufficient to show the trust relation of the defendant to the school board, and that he was acting in the matter for the board. Hence the allegations of the indictment bring him within the class of persons named in the statute, viz: a person acting in the capacity of agent. The indictment also alleges in direct terms that the defendant received one hundred dollars of the money belonging to the school district and embezzled it. It is next insisted that the indictment is void because it does not allege that the funds came into the possession of the defendant by virtue of his agency or employment. In our judgment the allegations of the indictment show that the defendant was an agent within the meaning of section 1837 of Kirby's Digest. Hence the objection amounts to no more than to urge that the money did not come into the defendant's hands, to use the language of the statute, "by virtue of such employment or office."

In this regard the indictment, after alleging the relation of the defendant to the school board, continues as follows: "and then and there he, the said W. A. Compton, having said warrant in his possession by reason of his said office as secretary of said board of directors, the said warrant being payable to him, the said W. A. Compton, or order, did indorse the same in blank as secretary on the back thereof, and then and there did present and deliver the same to the Bank of Marianna and then and there the said Bank of Marianna did present said warrant to the treasurer of Lee County, and then and there did receive from the said treasurer of said county $150 out of the funds belonging to the said Special School District No. 1 of Marianna, and then and there he, the said W. A. Compton, by virtue of his said office did receive from the Bank of Marianna the sum of $100 of said sum of $150 received," etc.

In determining a similar contention in the case of *State* v. *Scoggins*, 85 Ark. 43, the court said: "The indictment after alleging the relation of appellee to the railway company as that

of 'agent' says: 'And having then and there in his custody and possession as such agent as aforesaid.' These words are equivalent to charging that the funds alleged to have been embezzled came into the custody and possession of appellee by virtue of such employment as agent or by virtue of his agency. Words used in an indictment must be construed according to their usual acceptation in common language. Section 2242, Kirby's Digest. When we speak of one holding funds 'as agent,' every one understands that the words 'as agent' describe the relation in which, or by which, the funds are held. When these words 'as agent' are used in this connection, they are not *descriptio personae* at all, but they tell how the funds are held. In the usual acceptation, the meaning can be nothing else than that appellee was in possession of the funds, and such funds had come into 'his possession or under his care or custody by virtue of his employment as agent.' The language of our statute is 'which shall have come to his possession, or under his care or custody, by virtue of such employment or office;' and the exact language of the statute was followed in the indictment. In express terms it is alleged that 'the said W. A. Compton, by virtue of his said office, did receive from the Bank of Marianna the sum of $100 of said sum of $150,' etc."

As stated in the case of *State* v. *Costin*, 89 N. C. 511 "The possession and care are not confined to such as came in the ordinary course of business, but as well such as came by virtue of the relation." Continuing the court said: "The words 'by virtue' are very broad and serve well to effectuate the object for which they were employed. Hence it has been held, in construing a statute similar to the one under consideration, that where the thing embezzled came into the possession of the servant, out of the ordinary course of employment, in pursuance to a special direction from the master to receive it, the act came within the meaning of the statute " Therefore, it can not be said that the indictment does not allege that the money came into the possession of the defendant "by virtue of such employment or office" and in consequence does not charge the offense of embezzlement under the section of our statute under consideration. The proof shows that it was the custom of the president of the school board to sign warrants

in blank, and for the defendant to fill in the warrants for the proper amount; that the board only owed Mann $50, and that the defendant did not have authority to draw a warrant for $150, as it is admitted he did do; and that he did not have authority to receive $100 of the amount of said warrant. Consequently, counsel for defendant contend that the defendant, having acted beyond the scope of his authority in drawing the warrant for a greater amount than he was authorized by the school board, and also in receiving the $100, did not receive the money by virtue of his agency or office. In deciding a precisely similar question in the case of *People* v. *Gallagher*, 100 Cal. 466, the court held:    (quoting from syllabus):

"1.    Where the secretary of a corporation receives blank checks properly signed by the corporation's officers, with authority to fill them up in amounts aggregating a certain sum, and to draw the money and pay the creditors of the corporation, but he fills them up for larger amounts than he was authorized to insert, and draws the money and converts it to his own use, he receives the money 'by virtue of his employment' as agent of the corporation, and is guilty of embezzlement."

"2.    If an agent obtains the money of his principal in the capacity of an agent, but in a manner not authorized, and fraudulently converts the same to his own use, he receives it 'in the course of his employment' as agent, and is guilty of embezzlement."

The court in its opinion quotes from Bishop as follows: "That in reason, whenever a man claims to be a servant while getting into his possession by force of this claim the property to be embezzled, he should be held to be such on his trial for the embezzlement.    Why should not the rule of estoppel known throughout the entire civil department of our jurisdiction apply in the criminal?    If it applies here, then it settles the question," etc.    Bishop on Crim. Law, (3 ed.) § 367.    The court adds that in the seventh edition of the same work, like language, with some additions, is used at § 364 of volume 2.

In discussing the same question, in the case of *State* v. *Costin, supra*, the Supreme Court of North Carolina said:  "He (referring to the servant) is estopped in this respect.  He can not be allowed thus to take advantage of his own wrong and evade the law."    This is an application of the maxim of law,

recognized and established, that no man shall take advantage of his own wrong. The application of the doctrine of estoppel in criminal cases was recognized by this court in the case of *Fleener* v. *State,* 58 Ark. 98. See also *Smith* v. *State,* 53 Tex. Crim. 117, 15 Am. & Eng. Ann. Cas. 435; Ex parte *Hadley,* 31 Cal. 108; *Ker* v. *People,* 110 Ill. 629. The warrant set out in the indictment was introduced in evidence.

S. H. Mann testified: "I was employed by the Special School District as counsel in litigation had by the board against the contractors of the school building. I received $50 on March 22, 1906. The next remittance was for $55 was in a letter dated June 2, 1908. Fifty dollars was the balance of my fee and $5 was my railroad fare. That is all I ever received from the school district, and was the full amount of the fee to which I was entitled."

H. B. Derrick testified for the State:

"I was a member of the Board of Directors of Special School District of Marianna for a number of years, including the years 1906, 1907 and 1908. I was elected president of the board in 1907. The defendant, Compton, was elected secretary of the board in May, 1906. I was secretary of the board in March, 1906, preceding the defendant. When the question first arose about the school building, I was secretary of the board, and S. D. Johnston was president, and we employed Judge Compton and Mr. Mann to look after the suit. We were to pay Judge Compton $50 and Mr. Mann $100. This litigation was the only litigation we ever had. Fifty dollars of Mr. Mann's fee was paid in advance, and Judge Compton got his fee of $50 in advance. (Witness refers to page 50 of the school record, dated March 30, 1906). I gave Judge Compton a warrant for the money for him and Mr. Mann. (Witness identified the warrant dated October 4, 1907, described in the indictment). This warrant shows that it was issued on the 4th day of October, 1907, to pay Mr. Mann for his services. The witness also identified warrant for $150 dated June 2, 1908, which is shown at the bottom of page 67 of the transcript.

On cross examination the witness stated that he would sign warrants in blank most of the time. Whenever the district had any bills to pay, the secretary would come to him and he

would give him a warrant signed in blank. "We would both sign them. When I would sign them in blank, he would go and raise them." The warrant named in the indictment had no evidence of any erasures, but the defendant raised them after witness signed them. Witness knew that the defendant was going to fill them in. Defendant would ask witness for a signed warrant, and he would give it to him whenever there were any bills to pay. Witness states that Judge Compton was never employed in any other litigation but the school house case. Other evidence showed that the defendant indorsed the warrant to the Bank of Marianna for collection. That bank collected the money from the Lee County Bank as agent of the treasurer of Lee County. The defendant received the money from the Bank of Marianna after it was collected. Warrants were introduced in evidence showing a payment to S. H. Mann, retainer fee, $50, and to W A. Compton, retainer fee, $50. Warrants showing payment of the costs of the suit were also introduced. The defendant introduced in evidence the receipted bills of the sheriff for $11.20 and that of the clerk for $52.65 for costs in the school house case. A mere recitation of the evidence is sufficient to show that the jury were warranted in finding the defendant guilty. The defendant offered to introduce in evidence page 52 of the records of the school board. The record is dated February 15, 1906, and in substance shows that the defendant was to receive as a fee $75 if the controversy with the contractors about the school house was settled without suit, and if suit was brought, he was to receive one hundred dollars. The court refused to allow the introduction of the record, and counsel for defendant insist that the ruling of the court is erroneous. We can not agree with them. The defendant did not offer to connect the record with the transaction under consideration. The warrant described in the indictment was drawn in favor of the defendant for the fee of S. H. Mann, and was drawn for $150. At that time only $55 was due Mann, and he only received that amount. The defendant received the whole amount of the warrant. He has not introduced any evidence tending to show that he used any of the money in payment of any amount alleged due himself by the school district. In the absence of such evidence, the warrant on its face showing that it was for the fee of S. H. Mann, we do not

think the record in question was competent evidence. It is next urged that it should have been admitted as evidence tending to contradict Derrick. Such contradiction, however, for the reasons above stated, would have been on a collateral matter and consequently immaterial.

The instructions given by the court were contradictory, but it follows from the views we have hereinbefore expressed that the instructions given in behalf of the State were correct. It can not matter to the defendant that the instructions asked by him were not correct, or that the jury refused to follow them; for he was not prejudiced thereby. All he had a right to ask. was that the case should be submitted to the jury upon correct instructions and upon competent evidence. This was done, and the judgment must be affirmed.

McCULLOCH, C. J., dissents.

ON REHEARING.

Opinion delivered January 22, 1912.

HART, J. It is earnestly insisted by counsel for appellant that the language of section 1837 of Kirby's Digest plainly precludes the idea that its provisions were intended to extend to others than clerks, apprentices, servants, employees, agents and attorneys, of private persons and corporations and to like employees of incorporated companies Immediately following the phrase "or any person employed in any such capacity" is the following: "who shall embezzle or convert to his own use,  *  *  *  without the consent of his master or employer, any money," etc. They urge that the phrase, "without the consent of his master or employer," limits the employees intended to those of private persons, copartnerships or private corporations. They urge that neither the school district nor the members of the school board could consent that its employees or agents should embezzle or convert to their own use the funds belonging to the school district. School funds and the manner in which they are dealt with are definitely regulated by law, and the school board can not consent that school funds should be embezzled or converted to the use of the employees or agents of the school board. A majority of the court are of the opinion that this argument is sound and unanswerable, and

that the allegations made in the indictment do not bring appellant within the category of persons enumerated in section 1837 of Kirby's Digest. While recognizing the strength and force of the argument of learned counsel for appellant, I am still inclined to the views expressed in the original opinion. It follows, however, from the opinion of the majority that so much of our original opinion as holds that the indictment charges appellant with the offense of embezzlement, under section 1837 of Kirby's Digest, is overruled. The remainder of the opinion is still adhered to, and for the reason hereinafter given will be adopted as a part of this opinion on rehearing.

The Attorney General contended that the indictment was valid under section 1839 of Kirby's Digest, but on account of the views expressed in our original opinion we did not deem it necessary to determine his contention in this respect. It now becomes necessary for us to do so. Section 1839 reads as follows

"If any carrier or other bailee shall embezzle, or convert to his own use, or make way with, or secrete with intent to embezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security which shall have come to his possession or have been delivered to him, or placed under his care or custody, such bailee, although he shall not break any trunk, package, box or other thing in which he received them, shall be deemed guilty of larceny, and on conviction shall be punished as in cases of larceny."

In construing this section of the statute in the case of *Wallis* v. *State*, 54 Ark. 611, the court held:

"First. The statute defining the crime of embezzlement by 'any carrier or other bailee' (Section 1839, Kirby's Digest) is not confined to bailees of the generic class 'carriers,' but embraces all bailees.

"Second. An attorney who has collected funds belonging to a client is a bailee and not a debtor of such client.

"Third. An attorney employed under the act of March 31, 1885, to collect demands due to the school fund is guilty of embezzlement if he converts to his own use money so collected, notwithstanding the act provides that he may retain as a fee for collection 10 per cent. of the gross amount collected.

"Fourth. To constitute the crime of embezzlement

under this statute, it is unnecessary to prove a demand."

So in this case, under the allegations of the indictment and the proof made, we are of the opinion that appellant occupied toward the school fund that came into his possession the relation of bailee and not that of debtor.

In our original opinion we made quotations from the cases of the *State* v. *Costin,* 89 N. C., 511, and *People* v. *Gallagher,* 100 Cal. 466, and we see no substantial reason why the principles of law announced in those cases should not apply in a case like this. The proof in the case shows that whenever the school district had any bills to pay a warrant for the amount owed by the school district would be signed in blank, and appellant as secretary of the board would afterwards fill in the amounts. The warrant in question in this case was signed in blank, and was designed to pay S. H. Mann for legal services performed for the school district. Pursuant to the usual custom, it was delivered to appellant with directions for him to fill it out for the proper amount and pay Mann. Appellant made the warrant payable to himself for a greater amount than was due Mann. The warrant shows on its face that it was given in payment of legal services to Mann. Appellant received it for the express purpose of paying Mann for his legal services. He then fraudulently converted to his own use $100 of said amount. He can not now be allowed to take advantage of his own wrong and evade the law by saying that he had no right to raise the warrant and by that means come into possession of more money than was necessary to pay Mann. The statute is too broad and comprehensive in its purpose to allow such a distinction to destroy in a large measure its usefulness. It is insisted that under the principles announced in the cases of *Settles* v. *State,* 92 Ark. 202, and *Dotson* v. *State,* 51 Ark. 122, the defendant is not guilty of embezzlement under this section of the statute.

In the Settles case we held that a delivery of chattels upon a sale made on condition that the title shall pass on the payment of the purchase money at a future day is something more than a bailment. It gives the buyer a conditional title, and for this reason we held that the defendant was not a bailee within the meaning of the statute.

In the Dotson case a horse was delivered to the defendant

to be sold for the bailor, and the court held that if it was expressly or impliedly understood that the defendant should deliver to the bailor the money received for the horse he was a bailee, for it was within the meaning of the statute. The court said: "The word 'bailee,' when used in statutes declaring what acts of embezzlement shall constitute a public offense, is not to be understood," says Mr. Wharton, "in its large, but in its limited sense, as including simply those bailees who are authorized to keep, to transfer, or to deliver and who receive the goods first *bona fide* and then fraudulently convert."

"When it does not appear that any fiduciary duty is imposed on the defendant to restore the specific goods of which the alleged bailment is composed, a bailment under the statute is not constituted, though it is otherwise when a specific thing, whether money, securities, or goods, is received in trust and then appropriated." (Citing 1 Wharton, Cr. Law, (9 ed.) § 1055 and other authorities.)

In the application of these principles to the present case, we find that the money of the school district was delivered to the defendant in trust for the specific purpose of paying Mann for legal services owed him by the school district, and that the defendant in no sense was to receive any benefit from the transaction, or to acquire any interest in the money received by him. The money belonged to the school district, and was received by the defendant solely, and solely and exclusively for the benefit of the bailor, and in no sense for the benefit of the bailee. Hence the defendant was a bailee in its limited or restricted sense. They strongly insist, however, that because the defendant acquired possession of the excess, which he converted to his own use contrary to his duties in the matter, he did not receive it *bona fide* and is not guilty of embezzlement. As said by Mr. Bishop, why should not the rule of estoppel, known throughout the entire civil department of our jurisprudence, apply equally in the criminal? If it is applied here, then it settles the question; for by it when a man has received a thing of another by virtue of his fiduciary relation to him, he can not turn around and deny that he received it in that capacity. 1 Bishop's New Criminal Law, (8 ed.) § 364. The defendant here received the money of the school district by virtue of his re-

lation of trust and confidence to the members of the school board, and the money was received wholly and exclusively for the benefit of the school district. That is to say, it was received by him for the sole and express purpose of paying a debt of the school district, and he can not take advantage of his own wrong and escape the penalties of the statute by saying that he was not a bailee of the excess for the reason that he received it by virtue of his own wrongful act. The fact remains that he came into possession of it by virtue of the fiduciary relation he sustained to those in control of the fund. See, also, *State* v. *Costin*, 89 N. C. 511; *People* v. *Gallagher*, 100 Cal. 466, cited and commented on in our original opinion to which reference is here made.

As stated in our original opinion, no demurrer to the indictment was filed. A motion in arrest of judgment was filed; but under our statute the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. The indictment, stripped of its verbiage, leaves sufficient matter to apprise the appellant that the charge against him is for embezzlement. The language of the indictment, so far as respects the nature of the offense and the character of the crime charged, sets forth the fiduciary relation or the capacity in which the appellant acted and the means by which the funds came into his possession; and it also charged a fraudulent conversion of the funds by the appellant, and that they belonged to the school district. Indeed, it may be said that the appellant was apprised by the indictment of the precise nature of the charge made against him. *Fulton* v. *State*, 13 Ark. 168.

It follows that the motion for a rehearing will be denied.

McCULLOCH. C. J., (dissenting). I agree with the majority that, for the reasons stated in the opinion, the indictment can not be sustained under section 1837 of Kirby's Digest. It appears to have been prepared under section 1842, but it can not be sustained under that statute for several reasons; first, that school directors do not fall within the terms of the statute, nor are they custodians of any public funds, and the indictment does not contain the required allegation that appellant had taken the oath of office. *Wood* v. *State*, 47 Ark. 488. It is

now held by this court that the indictment is good under section 1839, which makes it embezzlement for any "carrier or other bailee" to embezzle or convert to his own use property "which shall have come to his possession or have been delivered to him or placed under his care or custody." The indictment can not, in my opinion, be sustained under that section of the statute, for the word "bailee" as there used must be construed in its limited sense, and not in the broad sense which includes one who wrongfully comes into possession of the property of another    *Dotson* v. *State*, 51 Ark. 119; *Settles* v. *State*, 92 Ark. 202; Whart. Crim. Law, § 1855; *Krause* v. *Com.*, 93 Pa. St. 148. Any other view entirely eliminated the distinction between larceny and embezzlement, which in one case involves an unlawful taking of property and in the other unlawful conversion. *Fulton* v. *State*, 13 Ark. 168. The facts alleged in the indictment do not, however, make out a case under section 1839. If the indictment had alleged that defendant embezzled funds of the district which the school board had drawn out of the county treasury and intrusted to him for some purpose, or that the school board had authorized him to draw a warrant on the treasurer and to receive the money thereon and pay it over to a creditor of the district, and that he embezzled such funds, I am not prepared to say that it would not have been a good indictment under this section. But it falls far short of alleging such a state of facts. It does not allege that defendant was intrusted with funds of the district for any purpose, nor that he received the funds as the property of the district, nor that he failed to account to the owner for the funds so collected. The substance of the allegations is that he and the president of the board drew a warrant, which specified that it was for a fee due S. H. Mann, and which was payable to the order of defendant as secretary. Now, reading these allegations in the light of the statute, which requires that all school warrants shall be drawn in favor of the person to whom the money is due, it can only be construed to mean either that the warrant was rightfully drawn in favor of defendant as agent of Mr. Mann, or that it was fraudulently and wrongfully drawn in defendant's favor. In the former case, the money became the property of Mr. Mann on being drawn from the treasury, and defendant is not charged with embezzling the property of Mr. Mann. It is

true the allegation is that, after the money was drawn out of the treasury, it was the property of the school district, but that is merely the statement of a conclusion, and one, too, that is inconsistent with the facts stated; for, if the warrant was rightfully drawn by the president and secretary, the money received thereon did not become the property of the district. Nor is the defendant charged with having fraudulently drawn the warrant. I can not see how, in any view of the contradictory allegations of the indictment, it can be said that sufficient facts are stated to make out a public offense. It is not sufficient merely to allege, in an indictment for embezzlement under this statute, that the accused embezzled and converted to his own use property belonging to another person. It is essential that it be charged that the property came into the hands of the accused as bailee for the person named, or facts should be alleged sufficient to show that funds came into his possession as bailee of said person. Here the allegation is that the funds came into the defendant's hands as secretary of the school board, which could not under the law be true. In the absence of a specific allegation that he was entrusted with the funds by the school board for a certain purpose, the language of the indictment can only mean either that the warrant was rightfully drawn and the funds, when received from the treasurer, became the property of Mr. Mann, or that the warrant was fraudulently drawn on the treasurer. There is nothing in the indictment which amounts to an allegation that the defendant was a bailee of the school district, and, in my opinion, the indictment, without containing such an allegation, does not charge a public offense. The case made by Mr. Derrick's testimony is that defendant was authorized by the school board to draw and collect a warrant for $50.00 due Mr. Mann, and that he fraudulently drew the warrant for $100.00 in excess of the amount due Mr. Mann and converted the excess to his own use. The indictment does not even hint at that state of facts, and the proof is wholly at variance with the accusation. As the indictment does not state facts sufficient to constitute a public offense, the defect could be taken advantage of by motion in arrest of judgment as well as by demurrer.